UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRADEWINDS GLOBAL LOGISTICS, LLC, ) ) ) Plaintiff/Counter-Defendant, ) ) vs. ) ) GARRETT'S TRANSPORTATION, LLC ) and LUNDES GARRETT, ) ) Defendants/Counter-Plaintiffs. ) | 1:15-cv-00608-RLY-DKL |

**ENTRY ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Tradewinds Global Logistics, LLC, filed its three-count Complaint for breach of contract, theft, and conversion against Defendants, Garrett's Transportation, LLC and Lundes Garrett. Defendants, who proceed *pro se*, filed counterclaims for malicious prosecution and abuse of process in a criminal action, defamation of business and personal character, and malicious prosecution in a civil action.[1] This matter now comes before the court on Defendants' Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment. Defendants only seek judgment on

---

[1] Defendants aver, "Plaintiff has not responded nor filed a responds [sic] to Defendant's Answer, Affirmative Defense, and Counterclaims. Therefore Plaintiff does not deny Defendant's Affirmative defense and Counterclaims." (Filing No. 14, Defendants' Motion for Judgment on the Pleadings). Defendants are wrong on the law and the facts. First, "A plaintiff . . . is not required to reply to an answer which does not set forth a counter-claim, unless a reply is ordered by the court." *Cange v. Stotler & Co.*, 913 F.2d 1204, 1209 (7th Cir. 1990). *See* Fed. R. Civ. P. 7(a)(7). Whereas this court never ordered Plaintiff to file a reply, Plaintiff was not obligated to respond to Defendants' Answer or the affirmative defenses set forth therein. The Federal Rules only required Plaintiff to respond to Defendants' *counterclaims*. *Id.* They did that. (*See* Filing No. 9, Plaintiff's Answer).

1

Plaintiff's Complaint, not their counterclaims.  For the reasons set forth below, the court **DENIES** Defendants' motion.

## I. Background

On August 14, 2014, Plaintiff and Defendants entered into the Broker Agreement. (Filing No. 1-1, Complaint ¶ 4).  (*See* Filing No. 1-1, Exhibit A – Broker Agreement). The Broker Agreement provides that Plaintiff, as the broker, will use Defendants, as the carrier, for specific projects and tasks as needed.  (Broker Agreement ¶¶ 4, 10).  On that same date, the parties also entered into the Trailer Interchange Agreement Between Carriers for Tradewinds Trailer SL680938 ("Trailer Interchange Agreement"). (Complaint ¶ 6).  (*See* Filing No. 1-1, Exhibit B – Trailer Interchange Agreement). Pursuant to those documents, Defendants agreed to pick up Tradewinds Trailer SL680938 ("Trailer") in Greencastle, Pennsylvania and deliver it to Plaintiff's lot in Westfield, Indiana.  (Complaint ¶ 7).  (*See* Filing No. 1-1, Exhibit C – Load Confirmation).  The Load Confirmation is also dated August 14, 2014.

Defendants were required to pick up the Trailer on August 15, 2014.  (Load Confirmation).  According to Plaintiff, they did just that.  (Complaint ¶ 8).  Defendants were then required to deliver the Trailer by August 25, 2015, but Plaintiff asserts they never made the delivery.  (Complaint ¶¶ 8, 9; Load Confirmation).  Plaintiff further states that Defendants maintain possession of the Trailer, and refuse to relinquish it despite repeated demands.  (Complaint ¶ 10).

According to Defendants, the Trailer was not at the designated location. (Filing No. 8, Defendants' Answer ¶ 8). Because the Trailer was not there, they could not have picked it up. (*Id.*).

On September 23, 2015, Plaintiff filed a Motion for Replevin and Immediate Possession of Property. A hearing on that motion is currently set for December 17, 2015.

## II. Legal Standard

Defendants have filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). Rule 12(d) provides, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." As the plain language of the rule suggests, a court may (1) "convert the 12[(c)] motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule," or (2) "exclude the documents attached to the motion [for judgment on the pleadings] and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). The court has discretion in determining which option to choose. *Id.; Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009).

Initially, it is important to clarify what documents are "outside the pleadings" for purposes of this motion. Rule 10(c) explains, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Therefore, the Broker Agreement, the Trailer Interchange Agreement, and the Load Confirmation, which were all attached to the Complaint, are part of the pleadings. The court may properly consider

3

them without converting the Motion for Judgment on the Pleadings into one for summary judgment. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639-40 (7th Cir. 2015).

In this case, the only evidence outside of the pleadings submitted by Defendants is an affidavit from Garrett. (*See* Filing No. 14-1, Garrett's Affirmation). In truth, the affidavit is more a brief than a sworn statement. Through this document, Garrett repeats many of the arguments advanced in Defendants' brief, but then also lodges a number of serious accusations regarding Plaintiff's intent to deceive and commit fraud. Yet, "an affidavit must be based on personal knowledge." *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 371 (7th Cir. 2015). *See* Fed. R. Civ. P. 56(c)(4). It is highly unlikely that Garrett has personal knowledge of Plaintiff's subjective intent, and Garrett offers no evidence to suggest that he does. His naked assertion that he has "personal knowledge of facts which bear on this motion" is simply not enough.

Defendants also cite to materials that Plaintiff attached to its Motion for Replevin, such as the Affidavit of Matthew Deck (Filing No. 11-1, Exhibit A) and the lease agreement for the Trailer (Filing No 11-1, Exhibit 1). However, these documents actually highlight the numerous disputes of material fact between the parties (e.g., whether the Trailer was actually at the pick-up location, whether Defendants picked up the Trailer). In light of those factual disputes, it is appropriate to permit the parties to engage in discovery rather than convert the motion into one for summary judgment. *See Covington v. Ill. Sec. Serv.*, 269 F.3d 863, 865 (7th Cir. 2001) ("Particularly in this case, where Covington's affidavit creates a material factual dispute . . ., the district court should permit the parties to engage in discovery before converting . . . a motion to

dismiss into one for summary judgment."). Therefore, the court elects to exercise its discretion by excluding all materials outside the pleadings and construing the instant motion as one for judgment on the pleadings.[2]

Pursuant to Rule 12(c), "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). To survive a Rule 12(b)(6) motion, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of ruling on Defendants' motion, the court accepts Plaintiff's well-pleaded factual allegations as true and construes all reasonable inferences in its favor. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015).

---

[2] Accordingly, the court declines to consider Plaintiff's Designation of Evidence (Filing No. 19) and Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (Filing No 20). In addition to these two documents, Plaintiff had also filed a Brief in Opposition to Defendants' Motion for Judgment on the Pleadings (Filing No. 16) two weeks earlier. It is unclear why Plaintiff opted to file two separate briefs—one opposing the motion for judgment on the pleadings and one opposing the potentially converted motion for summary judgment. This is a highly unusual practice. The court prefers plaintiffs to submit one consolidated brief in these circumstances.

Finally, the court recognizes that Defendants proceed *pro se*. When litigants appear in federal court unrepresented, the court is required to construe their filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

### III. Discussion

The court sets forth the governing law and then evaluates the sufficiency of each count in Plaintiff's Complaint.

#### A. Governing Law

It is well established that state law governs substantive issues in a diversity action. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 766 (7th Cir. 2015). Because the Complaint advances only state-law claims, the court must therefore decide which state's law governs this dispute. Plaintiff argues that Indiana law applies, and notes that the Broker Agreement has an unambiguous choice of law provision: "All civil actions filed as a result of disputes arising out of this Agreement shall be filed in the court of proper jurisdiction in Marion County, Indiana and the laws of the State of Indiana or applicable federal law shall apply." (Broker Agreement ¶ 15). Even though Defendants contend that the Broker Agreement is not a valid contract, the court finds that applying the choice of law clause is appropriate. Defendants' sole argument regarding the Broker Agreement's purported invalidity is that Plaintiff neglected to sign the document. This argument plainly lacks merit for the reasons discussed below. For purposes of governing law, this argument is also a non-starter. Defendants *did* sign the contract. Even if they neglected to read that provision, their signature indicated their intent to have all disputes governed by Indiana law. *See Hill v. Gateway 2000*, 105 F.3d 1147, 1148 (7th Cir. 1997)

("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome."). Moreover, Defendants made no argument whatsoever regarding the governing law in their opening brief and then chose not to submit a reply to Plaintiff's brief, wherein it argued that Indiana law applied. Indiana law therefore governs this dispute.

The many cases cited by Defendants come from state and federal courts all across the country, including the Third, Sixth, Ninth, and D.C. Circuit Courts of Appeals, the U.S. District Courts for the Western District of Pennsylvania and Southern District of New York, and the New York Court of Appeals. Because none of these cases are from the Seventh Circuit Court of Appeals or an Indiana appellate court, they are not binding upon this court. Decisions by a state or federal court on matters of New York law, for example, are simply inapplicable to the issues presented. The Indiana Supreme Court is, of course, the final authority on Indiana state law. *Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 177 (1940). *See also Wyatt v. Syrian Arab Republic*, 800 F.3d 331, 339 (7th Cir. 2015) ("As a federal court applying state law, our duty is to apply Illinois law as we believe the Illinois Supreme Court would, and in doing so, we accord great weight to the decisions of appellate courts.").

### B. Count 1 – Breach of Contract

Defendants argue that the pleadings provide "prima facie evidence that there is absolutely no contract" between the parties. Specifically, Defendants emphasize that the Broker Agreement was only signed by one party: themselves. Indeed, that fact is undisputed. Plaintiff never signed the document. According to Defendants, Plaintiff

7

cannot seek enforcement of an agreement that it never signed.[3]  Thus, the narrow issue before the court on Count 1 is whether the lack of Plaintiff's signature is fatal to its breach of contract claim.

In Indiana, the "basic elements of a contract" are "an offer, acceptance, a manifestation of mutual assent, and consideration."  *McIntire v. Franklin Twp. Cmty. Sch. Corp.*, 15 N.E.3d 131, 134 (Ind. Ct. App. 2014).  Unfortunately for Defendants, a signature is not one of those "basic elements."  *Id.  See Conwell v. Gray Loon Outdoor Mktg. Grp.*, 906 N.E.2d 805, 813 (Ind. 2009).  In fact, Indiana courts have routinely made clear that "the validity of a contract is not dependent upon the signature of the parties."  *Ind. BMV v. Ash, Inc.*, 895 N.E.2d 359, 366 (Ind. Ct. App. 2008).  *See State v. Daily Express, Inc.*, 465 N.E.2d 764, 767 (Ind. Ct. App. 1984) (same).  Signatures of both parties would be required if "such [was] made a condition of the agreement," *Int'l Creative Mgmt. v. D & R Entm't Co.*, 670 N.E.2d 1305, 1312 (Ind. Ct. App. 1996), but there is nothing in the plain language of the Broker Agreement to suggest that such a condition existed here.

Nonetheless, when an agreement is not signed, Indiana law requires "some form of assent to the terms."  *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 196 (Ind. Ct. App. 2007).  "Assent may be expressed by acts which manifest acceptance."  *Id.  See Pohl v. United Airlines, Inc.*, 110 F. Supp. 2d 829, 836 (S.D. Ind. 1999) ("As long as there is

---

[3] Defendants suggest that it is "standard practice" and even a U.S. Department of Transportation ("DOT") requirement that agreements between brokers and carriers be signed.  Failure to follow this rule will allegedly result in the DOT issuing a fine to the broker.  Defendants fail to cite any authority for this proposition though.

evidence to show that a meeting of the minds has occurred, a signed document is not the *sine qua non* to the creation of a binding contract."), *aff'd*, 213 F.3d 336 (7th Cir. 2000). Here, Plaintiff manifested assent to the Broker Agreement when it (1) wrote the terms of the agreement and (2) issued the Load Confirmation.

First, the fact that Plaintiff is the party that drafted the Broker Agreement indicates that it assented to the terms therein. *See Ind. BMV*, 895 N.E.2d at 366 ("White drafted the terms of the proposed contract, which indicates BMV [White's employer and principal] assented to those terms."). It seems unlikely that Plaintiff drafted the Broker Agreement and then tendered it to Defendants for their signature, but yet never intended to be bound by it.

Second, Plaintiff manifested assent by issuing the Load Confirmation. The Broker Agreement, which generally notes that Plaintiff will compensate Defendants for providing transportation services on an as-needed basis, was likely meant to serve as the framework for many future transactions. It discusses, *inter alia*, what happens if the carrier loses or damages freight, when the broker must pay the carrier, and whether the carrier can sub-contract its duties. The Load Confirmation, on the other hand, provides the specific details for the transaction at issue in this case–the load to be transported, the date it had to be picked up, and the date it had to be delivered. The Load Confirmation does not explain what would happen if Defendants damaged the Trailer, for example, because that was already covered in the Broker Agreement. In other words, by submitting this document to Defendants, Plaintiff was requesting that Defendants complete a specific project pursuant to the general guidelines established in the Broker

9

Agreement.[4]  Paraphrasing the Indiana Court of Appeals, "[A]lthough [Plaintiff] did not sign the written contract, [its] actions pursuant to the contract amount to a manifestation of [its] acceptance of the terms of the contract." *Int'l Creative Mgmt.*, 670 N.E.2d at 1312.

Additionally, it is worth noting that Defendants began carrying out their duties under the Broker Agreement without any objection to the missing signature.  Defendants signed the Load Confirmation and then traveled to Greencastle, Pennsylvania to pick up the Trailer.  In other words, they performed as if the parties had a valid contract.  Seemingly, it was not until Plaintiff filed suit that Defendants felt the contract was void. *See id.* ("More importantly, D & R's actions pursuant to the terms of the contract amount to a manifestation of its intent to bind itself to the terms of the contract notwithstanding the absence of Pebbles's signature.").

There can simply be no question that both parties manifested assent to the Broker Agreement–Defendants by their signature and Plaintiff by its acts.  The lack of Plaintiff's signature does not, in and of itself, render the Broker Agreement invalid.[5]  Therefore, Defendants' Motion for Judgment on the Pleadings on Count 1 is **DENIED**.

---

[4] In fact, the Load Confirmation appears to expressly refer to the Broker Agreement.  Although the poor quality of the document makes the language almost illegible, the last line of the first page appears to read, "THIS AGREEMENT IS SUBJECT TO THE TERMS OF THE BROKERAGE AGREEMENT PREVIOUSLY EXECUTED BETWEEN OUR COMPANIES."

[5] As noted above, Defendants make no argument regarding the governing law.  Nonetheless, the state cited most often in their brief is New York.  Even if this court determined that New York law applied to the issue of whether the Broker Agreement is a valid contract, the result would be the same: "[A]n unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound." *Flores v. Lower E. Side Serv. Ctr.*, 828 N.E.2d 593, 597 (N.Y. 2005).  *See also Huffer v. Herman*, 168 F. Supp. 2d 815, 824 (S.D. Ohio

### C. Count 2 – Theft; Count 3 – Conversion

Defendants offer no argument whatsoever regarding Counts 2 and 3, but then ultimately ask the court to dismiss Plaintiff's Complaint, in its entirety, with prejudice. Whereas Defendants fail to even mention these claims, it goes without saying that they have failed to meet their burden under Rule 12(c). To the extent that Defendants seek judgment on the pleadings on Counts 2 and 3, the motion is **DENIED**.

### IV. Conclusion

For the foregoing reasons, the court **DENIES** Defendants' Motion for Judgment on the Pleadings (Filing No. 14).

**SO ORDERED** this 8th day of December 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

Distributed via U.S. Mail:

Lundes Garrett
Garrett's Transportation, LLC
127 Rose Drive, Ste. 1
Saylorsburg, PA  18353

---

2001) (concluding that "the rules governing contract formation" are "universal and well-established").